UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ONTEL PRODUCTS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>YETI COOLERS, LLC,<br><br>Defendant. | Civil Action No.<br><br>16-5712 (SDW) (LDW)<br><br><br>**REPORT AND RECOMMENDATION** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

This is a declaratory judgment action between companies that manufacture and sell insulated beverage tumblers. Plaintiff Ontel Products Corporation ("Ontel") seeks a declaration that its product does not infringe the trade dress rights of defendant Yeti Coolers, LLC ("Yeti"). Yeti moves to dismiss Ontel's Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), contending that there was no justiciable case or controversy when Ontel filed this action. Because the Court agrees after considering the parties' submissions and hearing oral argument that it lacks subject matter jurisdiction, it respectfully recommends to the Honorable Susan D. Wigenton, U.S.D.J., that defendant's motion to dismiss be **GRANTED**.

## BACKGROUND

Ontel and Yeti manufacture and sell 30-ounce insulated beverage tumblers under the names "Rocky Mountain Tumbler" and "Rambler Tumbler," respectively. (Compl., ECF No. 1, ¶¶ 7-8). Ontel is incorporated and has its principal place of business in New Jersey. (*Id.* ¶ 5). Yeti is allegedly a Delaware corporation with a principal place of business in Austin, Texas. (*Id.* ¶ 6).

Ontel filed this action in September 2016 seeking a declaratory judgment that its product does not infringe Yeti's trade dress rights. (*Id.* ¶¶ 12-14). Service on Yeti reportedly was effected

on December 19, 2016. (ECF No. 13-1 at 4).[1] Yeti filed the instant motion to dismiss in February 2017. The Court held oral argument of the motion on May 5, 2017 and reserved decision.

In its Complaint, Ontel alleges two bases upon which it claims a "reasonable apprehension" that Yeti imminently would file a lawsuit against it concerning the tumblers. (Compl. ¶ 11). First, it alleges that during a meeting between an Ontel executive and "a buyer from a major national retailer," the buyer "stated that Yeti intends to file a lawsuit against Ontel for violating Yeti's intellectual property rights, including Yeti's trade dress rights due to Ontel's offering for sale and sale of the" Rocky Mountain Tumbler. (*Id.* ¶ 9). Second, it avers that Yeti pursues intellectual property claims against its competitors aggressively and has filed lawsuits "against at least [22] different manufacturers and/or retailers of insulated beverage containers." (*Id.* ¶ 10).

In their briefing of this motion, the parties sought to rely on four additional sets of facts outside of the Complaint. First, subsequent to the filing of this action, Yeti filed two lawsuits against Ontel in the Western District of Texas alleging that Ontel's products infringe Yeti's intellectual property rights. (ECF Nos. 13-1 at 4-5, 13-3, 13-4). Second, Ontel's President submitted a certification clarifying that the third-party buyer who allegedly warned Ontel that Yeti would file suit was an employee of Walmart Stores, Inc., who "stated that [Yeti] would file a lawsuit against Ontel as result [*sic*] of Ontel's offering for sale and sale of the Rocky Mountain Tumbler." (ECF No. 16-2 ¶ 4). Third, Ontel identified additional intellectual property lawsuits Yeti has filed in Texas, bringing the total of those lawsuits to 35 (including Yeti's new lawsuits against Ontel). (ECF No. 16-4). Finally, Ontel proffered a statement from a July 1, 2016 SEC filing by Yeti stating that it "vigorously defend[s] against infringement of [its] intellectual property" rights through initiation of "claims and litigation." (ECF No. 16-5 at 3).

---

[1]    No proof of service has been filed.

## DISCUSSION

### I.  The Motion

Yeti moves to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the Complaint does not allege a sufficient case or controversy to confer subject matter jurisdiction on this Court. Yeti styles its motion as a facial attack on the Court's jurisdiction, asserting that the facts alleged in the Complaint, taken as true, do not establish subject matter jurisdiction. Alternatively, Yeti moves to transfer venue to the Western District of Texas under 28 U.S.C. § 1404(a).

In support of its motion to dismiss, Yeti argues that Ontel's Complaint does not establish the type of "definite and concrete dispute" required by the Declaratory Judgment Act. (Yeti Br., ECF No. 13-1, at 5-13). According to Yeti, the Complaint does not allege that the parties had any contact before Ontel filed this action or that Yeti had taken any affirmative steps to enforce its intellectual property rights against Ontel. (*Id.* at 6). Rather, Yeti contends that Ontel filed this action as a preemptive attempt to "reserve" this Court as a forum for suit over the parties' products and indeed that it filed suit before Yeti even was aware of Ontel's product. Yeti posits that the preemptive nature of Ontel's suit is further evidenced by Ontel's not having served the Complaint on Yeti for months after filing this action, and having effected service on Yeti only after Yeti had filed suit against Ontel in Texas. (*Id.* at 1, 4-5).

Yeti further argues in support of its motion that the only facts upon which the Complaint relies to establish jurisdiction—the statement of the Walmart buyer and Yeti's litigation history—are insufficient. (*Id.* at 6-11). Yeti asserts that its Texas lawsuits against Ontel, filed after Ontel's filing of the instant action, are irrelevant because the facts relevant to an analysis of subject matter jurisdiction in a declaratory judgment action must be determined as of the date the complaint was

filed. (*Id.* at 11-12). Similarly, Yeti argues, the Court should not consider on this facial challenge to jurisdiction its statements in the SEC filing, as the Complaint does not mention that filing. (Yeti Reply Br., ECF No. 17, at 5 n.2).

In opposition, Ontel argues it established subject matter jurisdiction "under all the circumstances." (Ontel Br., ECF No. 16, at 4-8). The Walmart buyer's statement, Ontel asserts, reasonably put it on notice that Yeti would file a lawsuit. Ontel also emphasizes that prior litigious conduct is a circumstance relevant to assessing the existence of subject matter jurisdiction, relying on Yeti's pre-and post-Complaint lawsuits and the statements in its SEC registration statement to establish Yeti's "aggressive, litigious nature." (*Id.*). Ontel also opposes the request to transfer. (*Id.* at 8-20).

## II. Applicable Law

### A. Rule 12(b)(1) Standard

A party may bring a motion under Rule 12(b)(1) to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The district court must determine first whether the motion presents a facial or factual attack, because "that distinction determines how the pleading is to be reviewed." *Smalls v. Jacoby & Meyers, LLP*, Civ. A. No. 15-6559 (JLL), 2016 WL 354749, at *1 (D.N.J. Jan. 26, 2016) (internal quotation marks omitted). "In reviewing a facial challenge, which contests the sufficiency of the pleadings, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (internal quotation marks omitted). "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d

Cir. 2014). In analyzing a factual attack, the Court may review evidence outside the pleadings. *Id.*

Here, Yeti has affirmed both in its briefing of the motion and at oral argument that its challenge to the Court's jurisdiction is a facial one. Accordingly, the motion is analyzed properly as a facial attack, focusing on the allegations of the Complaint.

    B.    <u>Subject Matter Jurisdiction</u>

The Court, in determining the existence of subject matter jurisdiction, examines whether this action satisfies the Declaratory Judgment Act's limitation to "case[s] of actual controversy." 28 U.S.C. § 2201(a). The "actual controversy" requirement is rooted in Article III of the Constitution, which allows federal courts to resolve only "Cases or Controversies." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008) (internal quotation marks omitted). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). Post-complaint events may not create jurisdiction where none existed previously. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008).

The Supreme Court has held that for an actual controversy to exist, the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2009). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation marks omitted). There is no bright line rule for determining the existence of a case or controversy. *Id.*

The Federal Circuit has viewed the "immediacy and reality" requirement described in *MedImmune* through the lens of constitutional standing requirements.[2] *Prasco*, 537 F.3d at 1338. To meet the constitutional standing requirements, "[t]he plaintiff must have . . . suffered an injury in fact"—"'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Relevant to the Court's analysis under this standard is the objective threat of injury, not the plaintiff's subjective fear of suit. *PharmaNet, Inc. v. DataSci Ltd. Liab. Co.*, Civ. A. No. 08-2965 (GEB), 2009 WL 396180, at *5 (D.N.J. Feb. 17, 2009).

In intellectual property cases, the Federal Circuit has explained that the mere existence of an intellectual property right does not confer jurisdiction without an "affirmative act" by the holder of that right. *Prasco*, 537 F.3d at 1339 (internal quotation marks omitted); *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed Cir. 2007). Generally, jurisdiction exists in such cases if the parties have asserted "adverse positions with regard to their obligations, each side presenting a concrete claim of a specific right prior to the suit." *Prasco*, 537 F.3d at 1339. (internal quotation marks omitted). This does not necessarily require a direct accusation of

---

[2] Federal Circuit law applies to district court determinations of subject matter jurisdiction in patent cases. *SDS USA, Inc. v. Ken Specialties, Inc.*, Civ. A. No. 99-133 (WHW), 2002 WL 31055997, at *3 (D.N.J. Aug. 28, 2002). Although this case concerns trade dress infringement, district courts in this Circuit also have applied Federal Circuit law to declaratory judgment cases involving trademarks or trade dress. *See, e.g., Panda Apparel, LLC v. Spirit Clothing Co., Inc.*, Civ. A. No. 14-5514 (JLL), 2015 WL 5255249 (D.N.J. Sept. 8, 2015). Other Circuits also have observed "that [the] 'principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks.'" *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011).

infringement. *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011). At the same time, prior litigation by the declaratory judgment defendant concerning the same or related products is one factor relevant to the totality of the circumstances analysis, though it is not controlling. *See Prasco*, 537 F.3d at 1341; *First Quality Baby Prods., LLC v. Kimberly-Clark Worldwide, Inc.*, Civ. A. No. 09-0354 (WWC), 2009 WL 1675088, at *3 (M.D. Pa. June 15, 2009).

### III. Analysis

The Court's task on this motion is to determine whether Ontel's declaratory judgment action presents a case or controversy conferring subject matter jurisdiction on this Court. This requires analysis of the facts alleged to support jurisdiction. As noted above, on a facial challenge such as this, those jurisdictional facts are to be gleaned from the Complaint, read in the light most favorable to Ontel. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d at 243.

Ontel's Complaint asserts that a case or controversy is demonstrated by Yeti's history of aggressively pursuing trade dress lawsuits against its competitors in the tumbler market and by the statement of a third-party buyer that Yeti would sue Ontel. Although Ontel further seeks to rely upon Yeti's having filed suit against it in Texas subsequent to Ontel's filing of this action, consideration of those post-complaint lawsuits on this motion is barred by the settled rule that the Court may consider only the facts that had already occurred at the time Ontel filed the Complaint. *See, e.g., Prasco*, 537 F.3d at 1337; *Benitec Australia, Ltd.*, 495 F.3d at 1344. The Court may, however, take judicial notice of Yeti's SEC registration statement and Yeti's litigation history prior to Ontel's filing this action. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp.*, 181 F.3d 410, 426 (3d Cir. 1999); *Dicke v. Jialin Li*, Civ. A. No. 16-2163 (KM), 2017 WL 1011219, at *5 n.4 (D.N.J. Mar. 15, 2017); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir.

2014) (concluding that SEC filing attached to motion to dismiss could be considered as a matter of public record); *Orabi v. Attorney Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (stating that "the contents of another Court's docket" are judicially noticeable).

The Court finds that these facts are insufficient to demonstrate a case or controversy supporting subject matter jurisdiction. First, Yeti's aggressive enforcement strategy is not sufficient *per se* to establish declaratory judgment jurisdiction. Courts in this Circuit have declined to exercise subject matter jurisdiction under circumstances similar to this case, where, although the declaratory judgment defendant was demonstrably litigious, there were no pre-suit communications between the parties upon which the declaratory judgment plaintiff could have formed an objectively reasonable anticipation of imminent suit by the defendant. *See First Quality Baby Prods.*, 2009 WL 1675088, at *3-4 (holding defendant's history of suing nearly every company that introduced a product similar to plaintiff's product was insufficient to establish jurisdiction absent some affirmative act, such as pre-lawsuit communication between the parties); *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 610-11 (D. Del. 2009) (holding defendant's prior suits and public statements of general intent to enforce its rights, without more, were insufficient to establish a case or controversy where none of the facts alleged in the complaint suggested that the defendant believed that the plaintiff was infringing); *see also Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (holding defendant's "history of litigation against others, and general propensity to enforce its legal rights, did not establish an actual controversy between [the parties] over a device that [the defendant] had not seen and evaluated"). Yeti's history of aggressively enforcing its intellectual property rights against other companies does not establish that the parties to *this* case were on the brink of suit,

despite Ontel's subjective belief that a lawsuit was imminent.[3]

Second, the allegation that a non-party retailer told Ontel that Yeti intended to (or would) sue does not tip the scale in favor of finding a case or controversy, even when considered in conjunction with Yeti's litigious history.[4] Ontel does not cite any legal support for the notion that courts may consider a third party's statement of a party's intent in evaluating subject matter jurisdiction. Yeti, in contrast, cites law to the contrary, in which federal courts have found third-party statements insufficient to support subject matter jurisdiction in declaratory judgment actions. *See Innovative Therapies, Inc.*, 599 F.3d at 1379-80 (representation by plaintiff to third party that

---

[3] Ontel cites several cases for the proposition that prior litigation, or a lack thereof, is a relevant factor in assessing the totality of the circumstances. All are distinguishable. In those cases, either the prior litigation was between the same parties or there were other compelling factors supporting jurisdiction, such as pre-Complaint communication between the parties. *See, e.g., Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1360-62 (Fed. Cir. 2009) (holding that actual controversy as to infringement existed where patent owner sent letters to plaintiff "to discuss" the patent); *Medidata Solutions, Inc. v. DATARAK Intern., Inc.*, Civ. A. No. 12-4748 (WJM), 2013 WL 1989854, at *3 (D.N.J. May 13, 2013) (finding case or controversy based on prior litigation between the *same parties* concerning "very closely related" patents and a public statement by defendant that intended to enforce its patents); *PharmaNet*, 2009 WL 396180, at *6-10 (holding that prior litigation against others for infringement of the same patent, public statements in news articles, and a letter sent to defendants' attorney addressing licensing and requesting a response by a date certain, created a case or controversy). Here, Ontel does not allege any prior history of litigation between itself and Yeti concerning related products, which would speak to Yeti's knowledge of Ontel's products and therefore the likelihood of suit. Moreover, while Yeti has sued other companies that have marketed and sold tumblers, Ontel alleges no contact between the parties suggesting that Yeti knew about Ontel's product and had taken a position on infringement prior to Ontel's filing suit, as has occurred in other cases.

[4] Ontel's post-Complaint clarification makes a crucial change to the third-party buyer's statement, clarifying that that buyer stated that Yeti "would" sue Ontel based on the Rocky Mountain Tumbler, rather than "intends" to sue as originally alleged. (Compl. ¶ 9, ECF No. 16-2). While the Court is limited to the facts as alleged in the Complaint, and concludes that subject matter jurisdiction is lacking under that standard, this clarification is revealing and further supports the Court's recommendation of dismissal. The allegation in the Complaint that Yeti "intends" to sue suggests that the buyer had some particular knowledge or belief as to Yeti's actual litigation plans. Ontel's clarifying statement in the motion papers that the buyer stated that Yeti "would" sue, however, is more ambiguous and could suggest that the buyer subjectively believed that Yeti would sue Ontel without actual knowledge of those plans, based on Yeti's history of enforcing its rights in litigation.

parties' products had the "same technological characteristics" did not support finding of a case or controversy, even if defendant was aware of those representations); *Davidson v. Schneider*, Civ. A. No. 10-2101 (JHL), 2011 WL 882834, at *3 (N.D. Ill. Mar. 11, 2011) ("Representations made to third parties standing alone . . . do not establish a justiciable controversy."). Unless the third-party buyer was cloaked with actual or apparent authority to speak for Yeti, which is not alleged or even reasonably implied by the Complaint, the third-party buyer's statement was insufficient to constitute a statement of Yeti's intent. *See Boler Co. v. Raydan Mfg., Inc.*, 415 F. Supp. 2d 896, 902-03 (N.D. Ill. 2006) (finding statement of defendant's marketing manager that plaintiff's product infringed defendant's patent insufficient to constitute objective proof of defendant's intent to sue, given that employee lacked actual or apparent authority to speak for defendant on patent or litigation matters). Accordingly, the Court concludes that the alleged statement of the third-party buyer is entitled to minimal weight in this analysis, especially given that Ontel identifies no pre-litigation contact between the parties whatsoever. The Court therefore finds that Ontel has failed to allege facts demonstrating even that Yeti knew of Ontel's product prior to Ontel's commencement of this action, much less that it had concluded that Ontel's sale and marketing of the Rocky Mountain Tumbler infringed its intellectual property rights.[5]

By comparison, in the other declaratory judgment cases in which courts have found subject matter jurisdiction, there has generally been at least some direct contact between the parties suggesting their adverse legal interests prior to the filing of a lawsuit. No such contact is present here. For example, Ontel does not allege that Yeti sent Ontel any cease and desist letters, spoke

---

[5] Although it is not relevant to deciding this facial attack on subject matter jurisdiction, the Court notes that Yeti asserts that it had no knowledge of Ontel's product prior to Ontel's filing suit and indeed learned of the product only through Ontel's filing of this lawsuit. (ECF No. 13-1 at 4-5).

or met with Ontel representatives concerning its product, asserted that its product may infringe on Yeti's trade dress rights, or initiated lawsuits against Ontel in the past concerning related products. *See, e.g., Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 901-02 (Fed. Cir. 2008) (ruling that patentee's history of suing other companies, public statements of intent to pursue an aggressive licensing strategy, and warning letters to plaintiff suggesting that it license defendant's patent, created a case or controversy); *SanDisk*, 480 F.3d at 1374-76, 1382 (relying on the parties' licensing negotiation meetings during which defendant communicated its "studied and determined infringement determination[s]" to plaintiff); *Telebrands Corp. v. Exceptional Prods. Inc.*, Civ. A. No. 11-2252 (WJM), 2011 WL 6029402, at *2 (D.N.J. Dec. 5, 2011) (relying on phone conversation during which defendant accused plaintiff of infringement and asserted that it had causes of action against plaintiff, to find immediacy and reality of dispute). Indeed, in a remarkable admission as to the absence of a threat of imminent suit, Ontel specifically acknowledges in its brief that "the factual record simply does not contain the 'specific, concrete indications' that a lawsuit was imminent" based on the fact that "Yeti did not send Ontel a cease and desist letter, a draft complaint, specify a date on which they would file suit, or where Yeti would file suit." (Ontel Br., ECF No. 16, at 12).[6]

Therefore, having considered the all of the circumstances, the Court finds that the Complaint and other information that is judicially noticeable on this motion do not demonstrate the existence of a controversy of sufficient "immediacy and reality" to support subject matter jurisdiction. *SanDisk*, 480 F.3d at 1378. Ontel has failed to allege sufficient objective facts to support its subjective belief that a lawsuit was imminent. Because Ontel does not meet its burden

---

[6] Although Ontel made these arguments in opposition to the portion of Yeti's motion seeking transfer, Ontel's statements are equally applicable to the existence of subject matter jurisdiction.

to demonstrate that the Court has subject matter jurisdiction over this action, the Court lacks jurisdiction to transfer venue and the Court does not reach that aspect of Yeti's motion. *See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 643 (D.N.J. 2004) ("A court must itself have subject matter jurisdiction over an action before it may transfer that action under § 1404(a).").

## CONCLUSION

For the above reasons, this Court recommends that Yeti's motion to dismiss be **GRANTED**.

Dated: June 30, 2017

*/s/ Leda Dunn Wettre*
**Leda Dunn Wettre**
**United States Magistrate Judge**


Original: Clerk of the Court
cc: Hon. Susan D. Wigenton, U.S.D.J.
    All Parties